# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEW NGC, INC. d/b/a National Gypsum Company, NGC INDUSTRIES, LLC, and NATIONAL GYPSUM PROPERTIES, LLC, <br><br>　　Plaintiffs, <br><br>v. <br><br>ALPINEBAY, INC., <br><br>　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) **Case No. 19-CV-3978** <br><br> **Judge** <br><br> **Mag. Judge** |

## COMPLAINT

For its complaint against Defendant Alpinebay, Inc., Plaintiffs New NGC, Inc., NGC Industries, LLC, and National Gypsum Properties, LLC (together "Plaintiffs" or "National Gypsum") state as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant's unfair competition and trademark infringement resulting from its unauthorized use of Plaintiffs' registered and common law trademark and trade dress rights in and to the word PURPLE and the Color Purple *Per Se* ("PURPLE and Purple *Per Se* Marks") in connection with the marketing and sale of building products. Plaintiffs assert their claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and Illinois statutory and common law.

## THE PARTIES

2. Plaintiff New NGC, Inc., d/b/a/ National Gypsum Company, is a Delaware corporation with its principal place of business at 2001 Rexford Road, Charlotte, North Carolina.

1

C\1317692.2

3. Plaintiff NGC Industries, LLC is a Delaware limited liability company with its principal place of business at 2001 Rexford Road, Charlotte, North Carolina.

4. Plaintiff National Gypsum Properties, LLC is a Delaware limited liability company with its principal place of business at 2001 Rexford Road, Charlotte, North Carolina.

5. New NGC, Inc. and NGC Industries, LLC manufacture and sell high quality and advanced gypsum board products.

6. National Gypsum Properties, LLC is the brand holder for New NGC, Inc. and NGC Industries, LLC and licenses the use of the valuable National Gypsum brands to New NGC, Inc. and NGC Industries, LLC.

7. Upon information and belief, Defendant Alpinebay, Inc. is a California Corporation with its principal place of business at 1668 El Pinal Drive, Stockton, CA 95205.

## **JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a). This Court also has jurisdiction over the related state and common law claims pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant regularly transacts business in this State and District and engages in other systematic and continuous contacts in this State and District. Residents of this State and District can view and purchase Defendants' infringing products at home improvement stores located in this State and District. Further, upon information and belief, Defendant has committed related acts of trademark infringement and unfair competition in this State and District that have caused harm to Plaintiffs here and consumer confusion here.

10.     Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and 1391(c)(2).

## FACTUAL BACKGROUND

### The PURPLE and Purple *Per Se* Marks

11.     National Gypsum is one of the world's largest gypsum board producers, the second largest gypsum board producer in the U.S., and is recognized industry-wide for its superior customer service and product quality.

12.     National Gypsum markets and sells building products, including gypsum board, and cement board, as well as interior finishing products such as ready mix and setting joint compounds. Plaintiffs pride themselves on their reputation for product quality, customer service, and innovation in the industry. National Gypsum owns and operates a Technology Innovation Center in Charlotte, North Carolina that is an industry leader for performance, design, and technological breakthroughs in building products.

13.     Since at least 2003, Plaintiffs have continuously offered for sale and sold a line of building products, including without limitation gypsum board, cement board, and interior finishing products (collectively, the "Purple Products") under the word mark PURPLE and under the color Purple as a *per se* color mark (all common law and registered rights hereinafter "PURPLE and Purple *Per Se* Marks").

14.     The Purple Products are unique and superior to other building products in the field because they have advanced moisture, mold, and mildew resistant properties; stand up to impact from scratches, scuffs, and dents, dampen sound; and/or reduce airborne dust to improve air quality. Tests have shown that the Purple Products' moisture, mold, and mildew resistant properties, as well as their sound dampening properties, exceed those of other competitive

building products. These Purple Products do not derive any of their enhanced characteristics from use of the PURPLE and Purple *Per Se* Marks; they are derived from Plaintiffs' dedication to innovation.

15. Prior to the entry of the Purple Products into the marketplace, when a consumer wanted building products with moisture resistance above the standard "white board" drywall, the consumer would simply ask for "green board" – a generic industry term for moisture-resistant drywall. Plaintiffs' introduction and continued use of the PURPLE and Purple *Per Se* Marks serves to differentiate the source of the Purple Products from competitors in the moisture-resistant building products space.

16. As evidence of the strength and importance of the PURPLE and Purple *Per Se* Marks as source identifiers for National Gypsum, and to further identify National Gypsum as the source of the Purple Products, National Gypsum Properties, LLC owns three federal registrations in addition to its common law rights:

| Trademark | Reg. No. | Goods and Services |
|---|---|---|
| [purple board image] | 4,200,387 | Wallboard, gypsum board, gypsum panels, non-metal ceiling boards, cement board, cement backer board and exterior sheathing used for interior and exterior wall construction |
| SoundBreak XP | 5444791 | IC 019: Gypsum board |
| THE PURPLE BOOK | 5041654 | IC 016: Printed educational and reference materials, namely, guides, books, booklets and brochures regarding construction techniques, products, systems and procedures utilizing gypsum boards, cementitious panels and joint compounds. |

17. Pursuant to 15 U.S.C. § 1065, National Gypsum Properties, LLC's Registration No. 4,200,387 for the Color Purple in Class 019 has achieved incontestable status and is

4

conclusive evidence of National Gypsum Properties, LLC's ownership and exclusive right to use the Color Purple *Per Se*.

18. As further evidence of the strength and fame of the PURPLE and Purple *Per Se* Marks, and to further identify Plaintiffs as the source of the Purple Products, National Gypsum Properties, LLC owns the following pending U.S. Trademark Applications for the color purple and related purple trademarks.

| Trademark | Serial No. | Goods and Services |
|---|---|---|
| PURPLE EVOLVE YOUR WALLS | 88/275,369 | C 016: Printed pamphlets, informational flyers, booklets, and newsletters in the field of wallboard and plaster construction; printed educational and reference materials, namely, guides, books, booklets, and brochures regarding construction techniques, products, systems, and procedures utilizing gypsum boards and sound reducing gypsum boards; paper, namely, end tapes. IC 041: Providing a website featuring information and non-downloadable videos in the field of building materials; providing building materials information. |
| PURPLE EVOLVE YOUR WALLS | 88/275,373 | C 016: Printed pamphlets, informational flyers, booklets, and newsletters in the field of wallboard and plaster construction; printed educational and reference materials, namely, guides, books, booklets, and brochures regarding construction techniques, products, systems, and procedures utilizing gypsum boards and sound reducing gypsum boards; paper, namely, end tapes. IC 041: Providing a website featuring information and non-downloadable videos in the field of building materials; providing building materials information |

|  | 88/235,184 | IC 016: Printed pamphlets, informational flyers, booklets, and newsletters in the field of wallboard and plaster construction; printed educational and reference materials, namely, guides, books, booklets, and brochures regarding construction techniques, products, systems, and procedures utilizing gypsum boards and sound reducing gypsum boards; paper, namely, end tapes.<br>IC 019: Ceiling boards, sheathing, tile backer, grid marks as an integrated component of wallboard, wallboard, gypsum wallboard, gypsum panels, cement board.<br>IC 041: Providing a website featuring information and non-downloadable videos in the field of building materials; providing building materials information |
|---|---|---|
| PURPLE | 88/235,203 | IC 016: Printed pamphlets, informational flyers, booklets, and newsletters in the field of wallboard and plaster construction; printed educational and reference materials, namely, guides, books, booklets, and brochures regarding construction techniques, products, systems, and procedures utilizing gypsum boards and sound reducing gypsum boards; paper, namely, end tapes<br>IC 019: Ceiling boards, sheathing, tile backer, grid marks as an integrated component of wallboard, wallboard, gypsum wallboard, gypsum panels, cement board.<br>IC 041: Providing a website featuring information and non-downloadable videos in the field of building materials; providing building materials information. |

19. As a result of its widespread, continuous, and exclusive use of the PURPLE and Purple *Per Se* Marks since at least February 2003 to identify the Purple Products and Plaintiffs as the source of the Purple Products, Plaintiffs own valid and subsisting federal statutory and common law rights to the PURPLE and Purple *Per Se* Marks.

20. Since at least February 2003, Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting building products sold under the PURPLE

6

C\1317692.2

and Purple *Per Se* Marks. Plaintiffs' efforts include, but are not limited to, marketing through the www.askforpurple.com website, which is dedicated to the promotion of the high-performance and distinctive qualities of the Purple Products through pervasive use of the PURPLE and Purple *Per Se* Marks. Other examples of Plaintiffs' widespread marketing and promotion of the PURPLE and Purple *Per Se* Marks include the Ask for PURPLE YouTube channel (https://www.youtube.com/channel/UCzvAtLGOhMVOJdN_3bXCVYg), the Purple Products Residential Brochure (http://askforpurple.com/tips-tools/residential-brochure/ and depicted below), and The Purple Book®, which is a publication Plaintiffs create and distribute that contains instructions and technical drawings for fire-rated assemblies using Purple Products in commercial construction (https://nationalgypsum.com/file/PurpleBookII_for%20WEB-2018.pdf).



21. When customers visit the Lowe's website and view National Gypsum's XP® drywall, they can also view numerous photos and a video using the PURPLE and Purple *Per Se*

7

Marks (https://www.lowes.com/pd/Gold-Bond-Common-1-2-in-x-4-ft-X-8-ft-Actual-0-5-in-x-4-ft-x-8-ft-PURPLE-XP-Drywall-Panel/3010030).

22. The Purple Products have also been featured on national home renovation television shows like Smart Home on HGTV and This Old House on PBS. National Gypsum has also promoted the Purple Products in television advertising in select markets through the United States (e.g., https://www.youtube.com/watch?v=2O3znMdHMw8).

23. National Gypsum's promotional efforts in the PURPLE and Purple *Per Se* Marks have resulted in substantial sales of the Purple Products offered and sold connection with the PURPLE and Purple *Per Se* Marks.

24. Although typical drywall has long been considered a commodity product, consumers, homeowners, renovators, and building professionals have come to recognize the PURPLE and Purple *Per Se* Marks as signifying the source of the advanced and high-performance Purple Products sold by National Gypsum, and specifically ask for "Purple" as a way of seeking out Plaintiffs' building products for purchase.

25. As a result of Plaintiffs' long and successful use of the PURPLE and Purple *Per Se* Marks in connection with substantial sales, advertising, and promotion of the Purple Products, Plaintiffs have built up extremely valuable goodwill in the PURPLE and Purple *Per Se* Marks. The PURPLE and Purple *Per Se* Marks have become strong and distinctive, and both the consuming public and Plaintiffs' industry have come to recognize the PURPLE and Purple *Per Se* Marks as being solely associated with Plaintiffs.

26. Plaintiffs derive significant commercial value and goodwill from the ownership and use of the PURPLE and Purple *Per Se* Marks. To maintain this value and goodwill, Plaintiffs have taken great care and exercised substantial skill to ensure that the Purple Products sold in

connection with the PURPLE and Purple *Per Se* Marks are of the highest quality. As a result, the PURPLE and Purple *Per Se* Marks have not only achieved secondary meaning in the industry, but also are strong.

### **Defendant's Trademark Infringement**

27. Long after Plaintiffs' adoption of the PURPLE and Purple *Per Se* Marks, Defendant Alpinebay, Inc. began advertising, offering for sale, distributing, and selling purple building products online, in retail outlets, and to distributors and wholesale customers, using the word "purple" and the color purple as trademarks and trade dress without authorization (all unauthorized use of the word "purple" and the color purple by Defendant are hereinafter referred to as the "Infringing Purple Marks and Trade Dress").

28. Defendant sells prefabricated recessed shower niches under the mark EZ NICHE or EZ NICHES and under the Infringing Purple Marks and Trade Dress. Below is an example of the EZ NICHE/S product sold by Defendant.



29. Defendant's entire product line for the EZ NICHE/S products incorporates both the unauthorized use of the color purple and the word PURPLE. As reflected below in the screenshot below, Defendant's use of the Infringing Purple Marks and Trade Dress is intended to be a source identifier.

9

C\1317692.2



30. Alpinebay owns a supplemental registration for PURPLE BOX (Reg. No. 4,745,468) in class 11 for "preformed bathtub and shower boxes in the nature of niches used to store bathing products" which is used with the color purple on packaging of its purple shower niches without authorization. Defendant's use of the Infringing Purple Marks and Trade Dress is intended to be a source identifier.



31. Alpinebay also owns a registration for PURPLEGARD (Reg. No. 4,778,204) for "waterproof elastomeric sheeting for use in construction" in class 17. Alpinebay does not use this Mark as applied for but rather uses the mark PURPLE GUARD in connection with its liquid waterproofing membranes for showers and baths. Alpinebay's Purple Guard product also uses without authorization purple packaging and the product is purported to be purple when dried. Defendant's use of the Infringing Purple Marks and Trade Dress is intended to be a source identifier.



10

32. Alpinebay also sells a product under the brand name SURPRIMA which is a waterproofing membrane for showers and baths. This product is purple in color as seen in the below image of the product from the Alpinebay website and the color purple is used without authorization. Defendant's use of the Infringing Purple Marks and Trade Dress is intended to be a source identifier.



33. Upon information and belief, Defendant's use of the color purple on and in connection with all of its products is non-functional and is not a by-product of any manufacturing process.

34. As of April 28, 2008, Defendant's had constructive notice of Plaintiffs' rights in and to the Color Purple *per se*.

35. Upon information and belief, Defendant had actual notice of Plaintiff's rights in and to the PURPLE and Purple *Per Se* Marks prior to adopting the Infringing Purple Marks and Trade Dress.

36. The Infringing Purple Marks and Trade Dress are confusingly similar to Plaintiffs' PURPLE and Purple *Per Se* Marks.

37. Defendant's adoption and use of the Infringing Purple Marks and Trade Dress is an attempt to unlawfully trade on the goodwill and reputation consumers associate with the PURPLE and Purple *Per Se* Marks.

11

38. Since learning of Defendant's unlawful activities, Plaintiffs have sought, through continued correspondence to resolve this matter short of litigation but have received no response from Defendant.

## COUNT I
### (Trademark Infringement – Lanham Act, 15 U.S.C. § 1114)

39. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

40. Plaintiffs have continuously used the PURPLE and Purple *Per Se* Marks in interstate commerce in connection with the Purple Products since at least as early as 2003 and have priority over Defendant's use of the Infringing Purple Marks and Trade Dress.

41. Long prior to this proceeding and Defendant's use of the Infringing Purple Marks and Trade Dress, the PURPLE and Purple *Per Se* Marks acquired distinctiveness through secondary meaning and Plaintiffs established valid and subsisting federal statutory and common law rights to the PURPLE and Purple *Per Se* Marks.

42. Defendant's Infringing Purple Marks and Trade Dress are confusingly similar to the PURPLE and Purple *Per Se* Marks in appearance, commercial impression, and meaning. Further, the goods of the parties are highly related and travel through the same trade channels. Defendant's use of the Infringing Purple Marks and Trade dress are likely to cause consumer confusion as to source, origin, sponsorship, affiliation, association, or approval and mislead consumers, all to National Gypsum's damage.

43. Defendant Alpinebay, Inc.'s unauthorized adoption and use of the Infringing Purple Marks and Trade Dress, upon information and belief, has caused and will likely continue to cause confusion, mistake, or deception as to the source or origin of Defendant's products. Upon information and belief, Defendant's use has also caused and is likely to continue to cause

confusion, mistake, or deception as to whether Defendant's products are associated, affiliated or connected with, or approved or sponsored by Plaintiffs.

44. Defendant's unauthorized use of the Infringing Purple Marks and Trade Dress constitutes infringement of Plaintiffs' exclusive rights in and to the PURPLE and Purple *Per Se* Marks, including National Gypsum Properties, LLC's federally registered trademarks in violation of 15 U.S.C. § 1114.

45. Upon information and belief, Defendant's adoption and use of the Infringing Purple Marks and Trade Dress has resulted in injury and will continue to injure Plaintiffs because it has influenced the purchasing decisions of consumers and potential consumers of the Purple Products, diverted sales and potential sales of the Purple Products to Defendants, and damaged the substantial goodwill associated with Plaintiffs and the PURPLE and Purple *Per Se* Marks.

46. Upon information and belief, as a proximate cause of its unlawful conduct, Defendant has or will receive substantial profits to which it is not entitled. Defendant has competed unfairly with Plaintiffs and has realized unjust profits in an amount to be established at trial.

47. Defendant acted with full knowledge of Plaintiffs' rights in and to the PURPLE and Purple *Per Se* Marks and with the intent to usurp such rights. Defendant's actions are intentional, willful, and calculated to cause confusion, mistake or deception, entitling Plaintiffs to enhanced damages and attorneys' fees under 15 U.S.C. § 1117.

48. Defendant's conduct has caused and will continue to cause damage and irreparable harm to Plaintiffs unless enjoined by this Court. Plaintiffs have no adequate remedy at law, and Plaintiffs are entitled to injunctive relief.

## COUNT II
### (Unfair Competition & Trademark Infringement – Lanham Act, 15 U.S.C. § 1125)

49. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Plaintiffs have continuously used the PURPLE and Purple *Per Se* Marks in interstate commerce in connection with the Purple Products since at least as early as 2003 and have priority over Defendant's use of the Infringing Purple Marks and Trade Dress.

51. Long prior to this proceeding and Defendant's use of the Infringing Purple Marks and Trade Dress, the PURPLE and Purple *Per Se* Marks acquired distinctiveness through secondary meaning and Plaintiffs established valid and subsisting federal statutory and common law rights to the PURPLE and Purple *Per Se* Marks.

52. Defendant's Infringing Purple Marks and Trade Dress are confusingly similar to the PURPLE and Purple *Per Se* Marks in appearance, commercial impression, and meaning. Further, the goods of the parties are highly related and travel through the same trade channels. Defendant's use of the Infringing Purple Marks and Trade dress are likely to cause consumer confusion as to source, origin, sponsorship, affiliation, association or approval and mislead consumers, all to National Gypsum's damage.

53. Defendant Alpinebay, Inc.'s unauthorized adoption and use of the Infringing Purple Marks and Trade Dress, upon information and belief, has caused and will likely continue to cause confusion, mistake, or deception as to the source or origin of Defendants' products. Upon information and belief, Defendants' use has also caused and is likely to continue to cause confusion, mistake, or deception as to whether Defendant's products are associated, affiliated or connected with, or approved or sponsored by Plaintiffs, constituting trademark infringement and unfair competition under 15 U.S.C. § 1125(a).

54. Upon information and belief, Defendant's adoption and use of the Infringing Purple Marks and Trade Dress has resulted in injury to Plaintiffs because it has influenced the purchasing decisions of consumers and potential consumers of the Purple Products, diverted sales and potential sales of the Purple Products to Defendants, and damaged the substantial goodwill associated with Plaintiffs and the PURPLE and Purple *Per Se* Marks.

55. Upon information and belief, as a proximate cause of their unlawful conduct, Defendant has or will receive substantial profits to which it is not entitled. Defendant has competed unfairly with Plaintiffs and has realized unjust profits in an amount to be established at trial.

56. Defendant has acted with full knowledge of Plaintiffs' rights in and to the PURPLE and Purple *Per Se* Marks and with the intent to usurp such rights. Defendants' actions are intentional, willful, and calculated to cause confusion, mistake, or deception, entitling Plaintiffs to treble damages and attorneys' fees under 15 U.S.C. § 1117.

57. Defendant's actions have caused irreparable injury to Plaintiffs' reputation and goodwill and, unless enjoined, Defendants will continue their acts of unfair competition. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief.

## COUNT III
**(Common Law Unfair Competition / Trademark Infringement)**

58. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. Plaintiffs have continuously used the PURPLE and Purple *Per Se* Marks in interstate commerce in connection with the Purple Products since at least as early as 2003 and have priority over Defendant's use of the Infringing Purple Marks and Trade Dress.

60. Long prior to this proceeding and Defendant's use of the Infringing Purple Marks and Trade Dress, the PURPLE and Purple *Per Se* Marks acquired distinctiveness through secondary meaning and Plaintiffs established valid and subsisting federal statutory and common law rights to the PURPLE and Purple *Per Se* Marks.

61. Defendant's Infringing Purple Marks and Trade Dress are confusingly similar to the PURPLE and Purple *Per Se* Marks in appearance, commercial impression, and meaning. Further, the goods of the parties are highly related and travel through the same trade channels. Defendant's use of the Infringing Purple Marks and Trade dress are likely to cause consumer confusion as to source, origin, sponsorship, affiliation, association or approval and mislead consumers, all to National Gypsum's damage.

62. Defendant Alpinebay, Inc.'s unauthorized adoption and use of the Infringing Purple Marks and Trade Dress, upon information and belief, has caused and will likely continue to cause confusion, mistake, or deception as to the source or origin of Defendants' products, and has caused and is likely to continue to cause confusion, mistake, or deception as to whether Defendant's products are associated, affiliated or connected with, or approved or sponsored by Plaintiffs, constituting unfair competition in violation of the common law of the State of Illinois.

63. Upon information and belief, as a proximate cause of their unlawful conduct, Defendant has or will receive substantial profits to which it is not entitled. Defendant has competed unfairly with Plaintiffs and has realized unjust profits in an amount to be established at trial.

64. Defendant has caused irreparable injury to Plaintiffs' reputation and goodwill and, unless enjoined, Defendant will continue their acts of unfair competition. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief.

## COUNT IV
### (Violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.)

65. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. Defendant's conduct, which is in or affecting commerce, constitutes deceptive trade practices in the course of Defendant's business causing damage to Plaintiff, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., in that it has caused and is likely to continue to cause confusion, mistake, or deception as to the source or origin of Defendants' products, and has caused and is likely to continue to cause confusion, mistake, or deception as to whether Defendant's products are associated, affiliated or connected with, or approved or sponsored by Plaintiffs.

67. Defendant's unlawful conduct set forth herein has been and continues to be willful, deliberate, and in bad faith.

68. Defendant's unlawful conduct has and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no adequate remedy at law. Unless enjoined, Defendant will continue this conduct, further injuring Plaintiffs and confusing and misleading the public.

69. Upon information and belief, as a result of Defendant's unlawful conduct, Defendant has received revenues and profits to which it is not entitled, and Plaintiffs have also suffered damages as a result of such unlawful conduct, for which Defendant is responsible.

## COUNT V
### (Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.)

70. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

71. Defendant's conduct, which is in or affecting commerce, constitutes deceptive trade practices in the course of Defendant's business causing damage to Plaintiff, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*., in that it has caused and is likely to continue to cause confusion, mistake, or deception as to the source or origin of Defendants' products, and has caused and is likely to continue to cause confusion, mistake, or deception as to whether Defendant's products are associated, affiliated or connected with, or approved or sponsored by Plaintiffs.

72. Defendant's unlawful conduct set forth herein has been and continues to be willful, deliberate, and in bad faith.

73. Defendant's unlawful conduct has and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no adequate remedy at law. Unless enjoined, Defendant will continue this conduct, further injuring Plaintiffs and confusing and misleading the public.

74. Upon information and belief, as a result of Defendant's unlawful conduct, Defendant has received revenues and profits to which it is not entitled, and Plaintiffs have also suffered damages as a result of such unlawful conduct, for which Defendant is responsible.

## COUNT VI
**(Cancelation of U.S. Reg. No. 4,778,204 – 15 U.S.C. §§ 1051(a), 1119)**

75. Plaintiffs re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

76. Plaintiffs seek a cancelation of the mark PURPLEGARD shown in Registration No. 4,778,204 pursuant to 15 U.S.C. §1119 based upon non-use under 15 U.S.C. § 1064(3).

77. Upon information and belief, the PURPLEGARD registration is invalid and unenforceable as Defendant has abandoned the mark in connection with the goods in U.S. Registration Number 4,778,204. 15 U.S.C. § 1064(3).

78. Upon information and belief, Defendant has not used PURPLEGARD in connection with the goods identified in U.S. Registration Number 4,778,204 during the last three years and has no intent to resume such use.

79. Accordingly, Defendant's registration for PURPLEGARD must be cancelled under Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3), as amended.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Enter judgment that Defendant Alpinebay, Inc. has infringed Plaintiffs' rights in the PURPLE and Purple *Per Se* Marks, including National Gypsum Properties, LLC's federally registered trademarks;

B. Preliminarily and permanently enjoin Defendant Alpinebay, Inc., its officers, agents, representatives, employees, and those persons acting in concert or participation with them, from using the PURPLE and Purple *Per Se* Marks or any trade dress confusingly similar thereto in connection with any of Defendant's goods or services;

C. Order Defendant Alpinebay, Inc. to pay actual damages that Plaintiffs have suffered as a result of Defendant's infringement and unfair competition;

D. Order Defendant Alpinebay, Inc. to disgorge all profits attributable to their infringement and unfair competition;

E. Grant Plaintiffs treble and enhanced damages, attorneys' fees, and costs as provided for by federal and state statutes;

F. Grant further equitable relief in order to enjoin the harm caused by Defendant Alpinebay, Inc.;

G. Grant Plaintiffs prejudgment and post-judgment interest; and

C\1317692.2

H.   Grant such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: June 13, 2019

Respectfully submitted,

/s/Alice A. Kelly
Alice A. Kelly (6281897)
Shyla N. Jones (6309356)
Ice Miller LLP
200 West Madison Street, Suite 3500
Chicago, IL 60606
312.726.5167
Alice.kelly@icemiller.com
Shyla.jones@icemiller.com

*Attorneys for Plaintiffs*