**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:19-CV-03978 |
| v. | ) ) | Judge John F. Kness |
| Alpinebay, Inc., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR AN ORDER TO SHOW CAUSE**

Plaintiffs ProForm Finishing Products, LLC f/k/a New NGC, Inc. d/b/a National Gypsum Company and Gold Bond Building Products, LLC (collectively, "National Gypsum"), move for an order (1) to enforce the parties' Confidential Settlement and Release Agreement (the "Settlement Agreement"), and (2) to show cause as to why Defendant Alpinebay, Inc. ("Alpinebay") should not be held in contempt for violation of this Court's Permanent Injunction and Final Judgment (Dkt. #259) (the "Permanent Injunction"). Having been found liable for willful trademark infringement in May 2023, Alpinebay was required to cease using the color purple, in any shade, in connection with the sale, offering for sale, distribution, or advertising of its building products. After having more than four months to select a new color for its products—*any color other than a shade of purple*—Alpinebay simply chose a new shade of purple:



Alpinebay could have chosen black or brown or gray or beige or white or green or yellow or any of a variety of other colors that would have brought it into compliance. Instead, it chose another shade of purple. Even worse, after the deadline for compliance, Alpinebay continued to promote its wall niches with marketing materials bearing the original shade of purple that was the subject of the jury's finding of willful infringement.

While counsel for National Gypsum has raised issues of non-compliance with counsel for Alpinebay, violations have continued and remain ongoing. As such, National Gypsum seeks the Court's assistance to enforce the Settlement Agreement and hold Alpinebay in contempt.

1

I. **FACTUAL BACKGROUND**

After the jury returned a verdict in National Gypsum's favor on all claims and issues in this trademark action, the parties agreed to entry of the Permanent Injunction pursuant to the terms of their Settlement Agreement (attached hereto as Exhibit A). The Court entered the Permanent Injunction on September 15, 2023. (Dkt. #249.) According to its terms, beginning on February 2, 2024, Alpinebay was required to cease:

> a. using, or inducing or enabling others to use, **the color purple, in any shade** . . . on or in connection with the sale, offering for sale, distribution, or advertising of any building product in the United States or its territories;
>
> b. committing any acts, or inducing or enabling others to commit any acts, calculated to cause consumers in the United States or its territories to believe that Alpinebay's products are sold under the authorization, control or supervision of National Gypsum, or are sponsored by, approved by, or otherwise connected or associated with National Gypsum; and
>
> c. use of all marketing, promotional, and other materials (whether physical or electronic) bearing **the color purple, in any shade** . . . in or intentionally directed to the United States or its territories.

(*Id.* at pp. 2-3) (emphasis added).

Additionally, by no later than February 12, 2024, Alpinebay was obligated to destroy all matter in its possession or under its control (including product inventory, packaging, advertising materials (including brochures) and any other physical items) bearing the color purple in any shade and certify the same to this Court and National Gypsum. (*See id.* at p. 3.) On February 12, 2024, Alpinebay filed a one-sentence declaration certifying that "materials that are contemplated in Docket #249 have been destroyed." (*See* Dkt. #250.) Notably, this declaration was signed by William Lam, apparently in his personal capacity, and curiously does not state that "all" materials contemplated by the Permanent Injunction have been destroyed.[1]

---

[1] As discussed further below, National Gypsum's investigation indicates that all such materials have <u>not</u> been destroyed.

2

Notwithstanding the requirements of the Permanent Injunction and Settlement Agreement, National Gypsum discovered that long after the February 2 compliance deadline, Alpinebay continued to use its original shade of purple and at least two new shades of purple in connection with the sale, offering for sale, distribution, or advertising of its wall niche products. Examples of these uses are attached to the Affidavit of Kaity Y. Emerson, attached hereto as Exhibit B ("Emerson Aff."), and discussed in further detail below.

### Alpinebay Purple Wall Niches Advertised and Offered for Sale

As one example of Alpinebay's misconduct, since the February 2 deadline for compliance, Alpinebay has advertised wall niches in a new shade of purple on its website, as shown below (Emerson Aff., Ex. 1):



Alpinebay's wall niches in this new shade of purple are likewise advertised on the websites of third-party retailers. (Emerson Aff., Ex. 2.)

After discovering this violation, counsel for National Gypsum sent a letter to counsel for Alpinebay on February 13, 2024 to address the matter. Counsel for the parties discussed the issue via telephone on February 14, 2024. Alpinebay then changed the product images on its website to yet another shade. (Emerson Aff., Ex. 3.) While Alpinebay claims that this modified color is "pink," National Gypsum maintains that this color is another shade of purple[2]:

---

[2] In response to National Gypsum's efforts to confer on Alpinebay's lack of compliance, counsel for Alpinebay sent to the undersigned counsel photographs of two niches side-by-side: one in Alpinebay's

3



Alpinebay's wall niches in these two new shades of purple have also been offered for sale on the Home Depot website, after the February 2 compliance deadline and through the filing date of this Motion. Notably, the product specifications for Alpinebay's wall niches in the modified shade <u>describe the niches as being in the "purple" "color family</u>," as shown below (Emerson Aff., Ex. 4):

| Details | |
|---|---|
| Color Family | Purple |
| Features | No Additional Features |
| Number of Shower Pieces | 1 Piece |
| Product Weight (lb.) | 3.22 lb |

Indeed, a search for "purple shower niche" on the Home Depot website returns Alpinebay's products as the first two results; conversely, a search for "pink shower niche" on the Home Depot website returns none of Alpinebay's products in the results. (Emerson Aff., Ex. 5.) In fact, color family information in a product specification is typically provided to Home Depot by

---

original infringing shade of purple and the other in the new shade of purple that Alpinebay contends is "pink." This comparison of different shades used by Alpinebay invites confusion as to the relevant inquiry . The issue before the Court is <u>not a comparison of Alpinebay's original infringing shade of purple with its new shade</u>. Rather, the issue is that this modified color <u>is still a shade of purple</u>, which is prohibited. At minimum, this shows that Alpinebay has not kept a "safe distance" from the margin line between compliance with the order (enjoining the use of <u>any shade</u> of purple) and a violation. The requirements of the "safe distance rule," as followed by the Seventh Circuit, are discussed in detail below. Moreover, as the side-by-side photos of the two niches were sent on February 14, 2024, in response to National Gypsum's concerns raised on February 13, these photos call into question the veracity of Mr. Lam's declaration. (Dkt. #250.) Indeed, it appears the metadata may have been intentionally removed from these photographs. (*See* Affidavit of Matthew C. Hawkins, attached hereto as Exhibit D.) Even worse, when counsel for National Gypsum asked counsel for Alpinebay when the photos were taken, counsel for Alpinebay never responded. This raises serious questions regarding whether Alpinebay retained product inventory after the deadline for destruction.

the product vendor, *i.e.*, Alpinebay. (*See* Affidavit of Christian Noble, attached hereto as Exhibit C.)

**Alpinebay YouTube Videos Demonstrating Purple Wall Niche Installation**

Alpinebay has engaged in additional violations of the Permanent Injunction and Settlement Agreement through its YouTube advertising. Specifically, long after the February 2 compliance deadline, National Gypsum found that Alpinebay was continuing to promote through its website and its YouTube channel an Alpinebay YouTube video entitled "How to Install EZ-Niches® Wall Recessed Niches." This video demonstrates installation of Alpinebay's purple wall niche (Emerson Aff., Ex. 6):



**Alpinebay Product Materials Bearing the Original Infringing Shade of Purple**

Finally, National Gypsum has discovered that to this day, a variety of marketing, promotional and other materials, including at least a product brochure, installation guide, warranty document, and use and care manual <u>all bearing the original infringing shade of purple</u> remain available to the public via at least Alpinebay's website and Home Depot's website (see Emerson Aff., Exs. 7-10).[3] The table below reflects these ongoing uses of purple:

---

[3] The ongoing availability of these materials further calls into question the veracity of Mr. Lam's declaration, given that the Permanent Injunction requires, in relevant part, that beginning on February 12, 2024, Alpinebay "destroy or have destroyed all matter in its possession or under its control (including



| *Alpinebay EZ Niches Brochure:* | *Alpinebay EZ Niches Installation Guide:* |
|---|---|
| *Alpinebay EZ Niches Warranty:* | *Alpinebay EZ Niches Use and Care Manual:* |

## II. ARGUMENT

**A. ALPINEBAY'S CONTINUED USE OF PURPLE VIOLATES THE SETTLEMENT AGREEMENT.**

After prevailing on all claims and issues in this action, National Gypsum, in good faith and to avoid further costs of litigation, entered into a Settlement Agreement with Alpinebay. As outlined in detail above, National Gypsum has identified multiple instances of Alpinebay continuing to use shades of purple in connection with its products and marketing materials—including its original shade of purple that was the subject of the jury's finding of willful infringement, as well as two new shades of purple. These uses continued into February and March 2024, and to the date of this filing, and constitute clear violations of Paragraphs 3.a. and 3.b. of the Settlement Agreement.

National Gypsum requests that the Court find Alpinebay has violated the Settlement Agreement and order Alpinebay to immediately comply. "[T]he power to implement a

---

product inventory, packaging, advertising materials (including brochures), and any other physical items) on which **the color purple, in any shade** . . . appears." (Dkt. #249, p. 3) (emphasis added).

6

settlement agreement between the parties inheres in the district court's role as supervisor of the litigation." *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996)). "A settlement agreement is merely a contract between the parties to the litigation, wherein generally the defendants promise some partial remedy in exchange for the plaintiff's promise to dismiss the case and release the defendants from any future liability for their conduct that formed the basis of the dispute." As such, a district court's decision to enforce a settlement agreement will not be reversed absent an abuse of discretion. *Id.*; *see also Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 804 (affirming district court's enforcement of settlement agreement).

Under Illinois law, ordinary contract construction rules apply to a settlement agreement, and "the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement." *Laserage Technology Corp.*, 972 F.2d at 802 (quoting *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 522 N.E.2D 758, 764, 119 Ill. Dec. 96 (Ill. App. 1988)).

There can be no dispute that the Settlement Agreement is enforceable. Indeed, this Court was involved in settlement conferences and mediation that resulted in the parties negotiating and mutually assenting to the terms of the Settlement Agreement. Alpinebay's conduct as outlined above, and discussed further in Section II.B., *infra*, is in violation of at least Paragraphs 3.a. and 3.b. of the Settlement Agreement. As such, National Gypsum respectfully requests that this Court order Alpinebay to comply with Paragraphs 3.a. and 3.b. of the Settlement Agreement by immediately ceasing the sale, offering for sale, distribution, or advertising of any building product in any shade of purple, including the products and materials identified in Section I.

**B.     ALPINEBAY SHOULD BE FOUND IN CONTEMPT FOR ITS VIOLATIONS OF THE PERMANENT INJUNCTION.**

This Court should likewise hold Alpinebay in contempt for its failure to comply with the

7

Permanent Injunction. A Court "may issue a civil contempt order against a party that has failed to comply with an injunction." *APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2010 WL 4930688, at *1 (N.D. Ill. Nov. 30, 2010) (citing *Maness v. Myers*, 419 U.S. 449, 458, 95 S. Ct. 584, 42 L.Ed.2d 574 (1975); *S.E.C. v. Simpson*, 885 F.2d 390, 394 (7th Cir.1989)). "A district court has considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding." *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). "A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Bankers Life & Cas. Co. v. Derouin*, No. 20 CV 50340, 2021 WL 3910143, at *3 (N.D. Ill. Sept. 1, 2021) (quoting *Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 737 (7th Cir. 1999)). To demonstrate Alpinebay's civil contempt, National Gypsum must show by clear and convincing evidence that: (1) the Permanent Injunction sets forth an unambiguous command; (2) Alpinebay violated that command; (3) Alpinebay's violation was significant, meaning it did not substantially comply with the Permanent Injunction; and (4) Alpinebay failed to take steps to reasonably and diligently comply with the Permanent Injunction. *See id.* (citing *S.E.C. v. Hyatt,* 621 F. 3d 687, 692 (7th Cir. 2010); *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)). Importantly, "[t]he violation need not have been willful." *APC,* 2010 WL 4930688, at *1; *Bankers Life*, 2021 WL 391043, at *3.

### 1. The Permanent Injunction sets forth an unambiguous command.

There can be no dispute that the Permanent Injunction is an order that sets forth unambiguous commands, namely, the provisions addressed in Section I above. Indeed, both National Gypsum and Alpinebay stipulated and agreed to entry of the Permanent Injunction, pursuant to the parties' Settlement Agreement. *See Teledyne Techs., Inc. v. Shekar*, No. 15-CV-1392, 2015 WL 3799559, at *4 (N.D. Ill. June 17, 2015), *aff'd*, 739 F. App'x 347 (7th Cir. 2018)

8

("The terms of an injunction may qualify as such an unequivocal command, and a court's civil contempt power may therefore be properly employed to enforce an injunction."); *Grayline v. Garden Ridge*, No. 06 C 699, 2007 WL 9813298, at *2 (N.D. Ill. Apr. 26, 2007) (finding civil contempt where "it is clearly and convincingly established that: (i) a lawful order of reasonable specificity was entered by the court; and (ii) the order was violated.").

### 2. Alpinebay violated unambiguous commands in the Permanent Injunction.

Alpinebay's advertisement and sale of wall niches in various shades of purple on its website, via Home Depot and Lowe's, and through various marketing materials (such as its YouTube video, products brochures, installation guides, and the like) are direct violations of nearly all of the restrictions of the Permanent Injunction. As a result, Alpinebay should be held in contempt. *See Coilcraft, Inc. v. Inductor Warehouse, Inc.*, No. 98 C 0140, 2007 WL 2071991, at *12 (N.D. Ill. July 18, 2007) (finding defendant in contempt for failure to comply with the clear and specific obligations of a consent judgment); *Int'l Star Registry of Ill., LTD. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879, 885 (N.D. Ill. 2004) (holding defendant in contempt for failing to comply with consent decree and awarding attorney's fees to plaintiff).

### 3. Alpinebay did not substantially comply with the Permanent Injunction.

For the third factor of the contempt analysis, National Gypsum must show that Alpinebay's violation was significant. "Another way of saying that the contemnor's violation was significant would be to say that he did not substantially comply with the court order." *C&N Corp. v. Kane*, 142 F. Supp. 3d 783, 790 (E.D. Wis. 2015) (emphasis added). As a threshold matter, Alpinebay's continued promotion of wall niches bearing its original shade of purple that was the subject of the jury's finding of willful infringement clearly demonstrates that Alpinebay did not substantially comply with the terms of the Permanent Injunction. Those violations are significant and require a finding of contempt.

With respect to its use of modified shades of purple on certain product images, Alpinebay may argue that these shades are somehow compliant (notwithstanding its apparent representation to Home Depot that its modified shades are in the "purple" "color family"). National Gypsum maintains that these modified colors reflect a shade of purple. Even if there was some reasonable question as to whether they are a shade of purple, the law of the Seventh Circuit requires that where trademark infringement has already been found, the adjudicated infringer <u>must keep a safe distance from the line between compliance with an injunction against further infringement and a violation</u>." *C&N*, 142 F. Supp. 3d at 790–91 (citing *Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc.*, 215 F.2d 434, 436 (7th Cir. 1954) and *World's Finest Chocolate, Inc. v. World Candies, Inc.*, 409 F. Supp. 840, 844 (N.D. Ill. 1976)); *Baldwin Piano, Inc. v. Deutsche Wurlitzer, GmbH*, No. 03 C 2105, 2004 WL 1323940, at *2 (N.D. Ill. June 15, 2004) ("A party that has been found to have infringed a trademark must keep a safe distance from the margin line between compliance with the order and a violation."); *Serv. Ideas v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir. 1988) (where defendant had been previously enjoined from infringement, it "could not assert that its new design should be accorded the same leniency that a good faith user might ask for," and was obligated to select a new design "which would avoid all possibility of confusion.") (citing McCarthy on Trademarks and Unfair Competition § 30.13[1] ("[Without the so-called safe distance rule] the enjoined defendant could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to use of the new format.").

The instant action describes the exact scenario contemplated by the "safe distance" rule, which is followed by the Seventh Circuit. Here, the jury found Alpinebay liable for willful trademark infringement and unfair competition, and the Court entered the Permanent Injunction

to prevent further infringement by Alpinebay. As the adjudicated infringer, Alpinebay is now required to keep a "safe distance" from the line between compliance with and a violation of the Permanent Injunction. *See C&N*, 142 F. Supp. 3d at 790–91. The safe distance rule instructs an adjudicated infringer to select a "distinctively different mark" to avoid a scenario where "the parties must interminably return to court to haggle about every [different] mark." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985). In other words, the safe distance rule requires that an enjoined infringer make more than a minimal change to its infringing mark, and that use of that future mark be carefully scrutinized. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:21 (5th ed. 2023). Indeed, now that it has been enjoined, Alpinebay has an ongoing duty to select a mark that "would avoid all possibility of confusion." *Serv. Ideas, Inc.*, 846 F.2d at 1124 (citation omitted).

Prior cases in which adjudicated infringers' uses of different marks were deemed too close to the line for compliance reflect the purpose of the safe distance rule. For example, in a case before another court in the Seventh Circuit, a permanent injunction was entered after the defendant was found to have infringed the plaintiff's HALLOWINE mark by using the identical mark HALLOWINE. *C&N*, 142 F. Supp. 3d at 785. The court later held the defendant in contempt for violating the injunction after it began using modified marks, including the mark HALLOW. *Id.* at 789–90. In so holding, the court observed that the question was not whether the new marks infringed the plaintiff's mark in the first instance, as that had already been decided; instead, having infringed the plaintiff's mark, the defendant was required to keep a "safe distance" from the line between compliance with an injunction and a violation, and its new marks got as close to the line as possible and, in fact, crossed it. *Id.* at 790–91.

In a prior case from this Court, the defendant's use of THE DOWN SHOPPE & Goose

11

Design mark was found to have infringed the plaintiff's SCANDIA DOWN SHOPS & Goose Design mark. *Scandia Down*, 772 F.2d at 1425–26. After the district court entered a preliminary injunction against the defendant, the defendant was later held in contempt based on its use of a new mark, ORIGINAL DOWN SHOPPES OF CONTINENTAL QUILT & Goose Design and a second new mark, DOWN SHOPPES OF CONTINENTAL QUILT & Goose Design. *Id.* at 1426. The defendant then began using a fourth mark, THE DOWN SHOPPE. The court held the defendant in contempt a second time for violating the preliminary injunction. *Id.* In affirming the contempt rulings of the district court, the Seventh Circuit stated that the district court "possesse[d] substantial discretion to decide how close is too close" to the first infringing mark and was entitled to require the defendant to choose a different one to avoid the parties returning to court to continue to "haggle about every mark." *Id.* at 1432. The Seventh Circuit observed that the district court's injunction was a "modest restriction" on the universe of logos available to the defendant, and the defendant was then required to "live with the consequences of its prolonged disregard" of the plaintiff's rights. *Id.*

The very fact that National Gypsum has had to police Alpinebay's post-injunction conduct—with Alpinebay even changing some of its online product images *again*, long after the deadline for compliance—confirms that Alpinebay has not kept a safe distance from the margin line for compliance. The language of the Permanent Injunction controls subsequent proceedings concerning contempt thereof (*see Scandia*, 772 F.2d at 1432), meaning that the question is not whether Alpinebay's current shades of purple create a likelihood of confusion with National Gypsum's marks; instead, the question is whether Alpinebay's current shades are a safe distance from the line for compliance. As a willful infringer, Alpinebay cannot assert that the Court should accord any new shade the same leniency that a good faith user might seek. *See Serv.*

12

*Ideas*, 846 F.2d at 1124. Because Alpinebay continues to advertise products and offer marketing materials using "the color purple, in any shade," Alpinebay has not kept a safe distance from the enjoined mark and has violated the Permanent Injunction (and the Settlement Agreement). As a result, Alpinebay has failed to substantially comply.

### 4. Alpinebay failed to take steps to reasonably and diligently comply.

Finally, Alpinebay may be found in contempt even if its violations were not willful; all that is necessary for a finding of contempt is that Alpinebay "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *C&N*, 142 F. Supp. 3d at 791 (quoting *Am. Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982)). Here, Alpinebay's efforts to comply with the Permanent Injunction were neither reasonable nor diligent. The Permanent Injunction required Alpinebay to permanently cease using the color purple, in any shade, in connection with the advertising, offering and sale of building products. As described above, Alpinebay did not do so. Instead, Alpinebay continued using its original shade of purple on certain promotional materials, and chose different shades of purple for the product images on its website and available through third-party retailers. Alpinebay's refusal to simply pick a different color (perhaps black or brown or gray or beige or white or green or yellow) reflects an apparent effort to outsmart this Court's order and the parties' Settlement Agreement, and to continue trading on National Gypsum's goodwill in its PURPLE marks. *C&N*, 142 F. Supp. 3d at 791 (holding the defendant in contempt for violating a permanent injunction in a trademark infringement case and finding that defendant's efforts to comply with the injunction "do not reflect a good faith effort . . ., but a conspicuous attempt . . . to 'outsmart' the injunction."). As a result, this Court should find that Alpinebay failed to take steps to reasonably and diligently comply with the Permanent Injunction. *See APC*, 2010 WL 4930688, at *2 (finding that contempt was appropriate in a case where "there simply are too many

13

violations to conclude that Defendants engaged in reasonable diligence and/or acted energetically in attempting to comply with the permanent injunction").

Alpinebay is likely to argue that it has taken *some* steps to comply with the Permanent Injunction, by, for example, changing its original shade of purple to a new shade, and through additional steps it took after National Gypsum's counsel raised issues of non-compliance with Alpinebay's counsel. Even assuming Alpinebay made any good faith efforts to comply (which National Gypsum disputes), the violations that have occurred and continued since the deadline for compliance require a finding of contempt. The court's discussion in *Nav-Aids Ltd. v. Nav-Aids USA, Inc.* is instructive. 2002 WL 773763 (N.D. Ill. Apr. 26, 2002). Addressing similar arguments of "substantial compliance" by the defendant enjoined infringer, the court noted that "civil contempt may be established even though the failure to comply with the Court's order was unintentional or done with good intent." *Id.* at *7-8. The defendant argued that "achieving total compliance with the permanent injunction and settlement agreement" was "more complicated than anticipated, and thus [took] much longer than expected," that it is "a small company which is basically run by only three individuals," and that it was "using its best efforts to comply." *Id.* at *6. Further, while conceding that some enjoined uses of the accused mark may have been "overlooked," the defendant argued that it was "making changes as they are discovered." *Id.* at *7. The defendant thus argued that it was "in substantial compliance" with the permanent injunction and had been "'reasonably diligent' in attempting to comply." *Id.* at *8. The court rejected the defendant's position that such "attempts" at compliance obviated the need for a finding of contempt and concluded that the defendant's contempt justified a monetary remedy to the plaintiff. *Id.* at *8-9; *see also Int'l Star Registry of Ill., LTD.*, 325 F. Supp. 2d at 884 ("[Plaintiff's] continuous discovery of readily observable violations demonstrates [defendant's]

14

lack of reasonable diligence in its efforts to comply with the Consent Injunction."); *World Trade Centers Ass'n, Inc. v. World Trade Illinois*, 2015 WL 3777611, at *2 (N.D. Ill. June 15, 2015) (granting plaintiff's motion to hold defendants in contempt in a trademark action for defendants' several violations of a consent judgment).

Alpinebay must be held accountable for its actions. "Sanctions may be both coercive, seeking to induce future behavior, and remedial, compensating the aggrieved party for losses sustained because of the contumacy." *Bankers Life*, 2021 WL 391043, at *3. "A district court has wide latitude to craft civil contempt sanctions to coerce obedience to the court's orders and compensate plaintiff for losses." *Id.* at *5 (quotation omitted). "It is well established that a court may award attorneys' fees and costs in connection with a contempt proceeding." *APC*, 2010 WL 4930688, at *4. As such, National Gypsum requests that this Court hold Alpinebay in contempt, order it to immediately comply, and award National Gypsum the attorneys' fees and costs that it has and will incur in investigating Alpinebay's failure to comply and in bringing this Motion, and any other contempt sanction the Court finds appropriate.

### III.    CONCLUSION

National Gypsum requests that this Court issue an order (1) finding a violation of the Settlement Agreement and ordering Alpinebay to immediately comply with its terms, (2) compelling Alpinebay to show cause as to why it should not be held in contempt for its violations of the Permanent Injunction, and (3) awarding National Gypsum its attorneys' fees and costs incurred in connection with its investigation of Alpinebay's failure to comply with Settlement Agreement and Permanent Injunction, including the bringing of this Motion.

Dated: March 18, 2024.

        Respectfully submitted,

        /s/ Kathryn G. Cole

        Kathryn G. Cole
        N.C. State Bar No. 39106
        J. Mark Wilson (*pro hac vice*)
        N.C. State Bar No. 25763
        Samuel C. Merritt (*pro hac vice*)
        N.C. State Bar No. 47945
        Kaity Y. Emerson (*pro hac vice*)
        N.C. State Bar No. 57882
        MOORE & VAN ALLEN PLLC
        Bank of America Corporate Center
        100 North Tryon Street, Suite 4700
        Charlotte, North Carolina 28202
        (704) 331-1000
        (704) 331-1159 (facsimile)
        E-mail: katecole@mvalaw.com
        E-mail: markwilson@mvalaw.com
        E-mail: sammerritt@mvalaw.com
        E-mail: kaityemerson@mvalaw.com
        *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that a true and correct copy of the foregoing was served upon Defendant's counsel on March 18, 2024, via the Court's CM/ECF filing system.

Date: March 18, 2024                              /s/ Kathryn G. Cole